Number 2, 22-12-848 Pasqual-Andres v. U.S. Attorney General And we have Mr. Alhorn and Mr. Wall here for the petitioner, Ms. McKinney here for the respondent. Return engagement for the University of Alabama Clinic. Welcome back. Mr. Alhorn, you're going to start us off, is that correct? Yes, Your Honor, that is correct. Very well. Six minutes. May I begin? You may. Thank you, Your Honor. May it please the Court, Chris Alhorn for the petitioner, Jeremias Pasqual-Andres. Can I ask you one just housekeeping question right off the top? Does it matter at all that your client has been removed? No, Your Honor, it does not matter at all for the purposes of mooting this case. And that's simply because, as the Tenth Circuit has held, that when a sua sponte reopening petition is filed, that petition can be filed under Federal statute whether the petitioner is in or outside of the country. So it does not matter for our purposes here. Okay, fine. Thank you, Your Honor. Your Honor, Lazada contains three requirements that a petitioner claiming ineffective assistance of counsel must meet. Only the third requirement is at issue today. That requirement compels a petitioner to file a complaint with the appropriate disciplinary authorities. This Court should reverse and remand this case to the BIA because Pasqual complied with Lazada's third requirement in three separate ways. First, he filed a complaint with the EOYR. That is strict compliance with Lazada's third requirement. Second, even if an EOYR complaint is somehow not strict compliance, it at least substantially complies with Lazada's third requirement. Third and finally, even if this Court disagrees with the idea that the EOYR complaint is strictly or substantially compliant with Lazada, this Court should still reverse the BIA's decision because Pasqual's ineffective assistance of counsel claim was obvious on the face of the administrative record. Moving to the first point, Mr. Pasqual strictly complied with Lazada by filing a complaint with the EOYR. That is an appropriate disciplinary authority under Lazada. Do we know why your client didn't just file a complaint with the State Bar? We don't know for certain, Your Honor, but filing with the EOYR makes sense in this case. He was represented by an attorney who practices in immigration court and the EOYR disciplines attorneys in the immigration system. So it is quite a logical thing to do in this instance. And furthermore, filing with the EOYR meets the plain meaning of Lazada. And that's because the plain meaning of Lazada is that a petitioner must file with an authority that has the power to discipline his attorney. The EOYR has such a power. To be clear, we're not contending in this case that the EOYR is the only disciplinary authority that Mr. Pasqual could have filed with, only that it is an appropriate disciplinary authority. Filing with the State Bar or the EOYR would have been sufficient in this case. What do you do with post-Lazada BIA precedent that repeatedly calls this thing the bar complaint requirement? Well, there are a few points I'd like to make there, Your Honor. First of all, that language is shorthand. And the reason we know it's shorthand is because in Rivera, the Court used the phrase bar complaint requirement in quotation marks the first time they referenced it. The second reason we know that, Your Honor, is because the Federal regulations changed the powers that the EOYR had after Rivera. Therefore, the Rivera's description is outdated. At the time the EOYR, at the time Rivera was decided, the EOYR had very limited powers. Thus, now with more expanded powers, it would make less sense to refer to the complaint requirements, the third requirement of Lazada, as a bar complaint. But it would have made sense at the time Rivera was decided. When were the changes that you think MATTER made? I believe in 2009, Your Honor. The regulations were altered. So what do we do then with this case, MATTER of Jesus Melgar, which was decided in 2020, which also calls it the bar complaint requirement? Well, it uses that phrase three times in one paragraph, Your Honor. But I'll note that it uses a few different shorthands. So it uses another shorthand at the top where it's describing the question before the court. It doesn't use the phrase bar complaint requirement. Off the top of my head, I don't remember what it is, but it doesn't use that phrase at that point. So what the Court's trying to get at is it's trying to figure out how to describe this third requirement. And using the words bar complaint requirement can sometimes make sense because that's the most common way to comply, but it's not the only way to comply. And the plain language of Lozada makes that clear. Well, if the interest is to make sure that a deficient attorney doesn't represent anyone in any matter, it seems that a state bar complaint is the appropriate vehicle for that, whereas the EOIR's jurisdiction is pretty limited just to making sure that that attorney doesn't appear in immigration proceedings. Isn't that correct? Well, it is true that the EOIR can only disbar an attorney in immigration proceedings, but it's not true that a state bar, as the BIA, or rather as the BIA did contend, has the power to discipline an attorney in all jurisdictions. But in context, don't you think the BIA really just meant general disciplinary authority? I mean, I don't think, no one thinks that the Alabama bar can disbar somebody in Montana, right? Certainly not. So, I mean, just in context, don't you think a fairer reading of the BIA's order is that it just means general disciplinary authority within its jurisdiction? Perhaps, Your Honor. What I would note is that disbarring or punishing an attorney in the State of Florida where Mr. Varas is from would not necessarily have an impact in other States. So, for example, if Mr. Varas was punished in the State of Florida by the Florida State Bar and he went to practice in a different State, he could still appear before the immigration courts in that State. So, filing with the EOIR... But once they decide he'd have to disclose his prior disciplinary record, and then that court gets to decide whether they feel comfortable with him representing clients in their jurisdiction. They could, Your Honor. But what I would note is that it works the same way with the EOIR, because all EOIR decisions are transmitted to the State bars. So, it has the same kind of reciprocity that State bars would have with each other. Thank you, Your Honors. Very well. Thank you so much for your presentation. All right. Your colleague, Mr. Wall, and you're reserving three minutes for rebuttal, correct, Mr. Wall? Yes, Your Honor. All right. May it please the Court. I will pick up where my co-counsel, Mr. Alhorn, left off. And at the end of this strict compliance argument is that strict compliance with Lozada, holding it to mean that you can only file a complaint with a State bar, creates an unworkable solution. And that unworkable solution is present in immigration courts because of accredited representatives. Individuals may be represented by attorneys or accredited representatives. Filing a complaint with the State bar can have an impact on an attorney in immigration court, but the State bar does not license those accredited representatives. They are only licensed by the EOIR. The EOIR is the only body who can punish those accredited representatives. Am I wrong in thinking that the BIA has already carved out an exception for these accredited representatives saying that they don't need to satisfy Lozada's third prong in a case called NREA, unpronounceable, but that begins with a Z? Your Honor, no— Medusca or something like that? Medusca? Does that ring a bell with you? No, Your Honor. The EOIR regulations nor Lozada bifurcate punishments or regulations for accredited representatives or attorneys. The regulations cover the disciplinary actions of practitioners in immigration courts, and it does not delineate between licensed attorneys and accredited representatives. So the BIA has not directly addressed this issue. And additionally, if petitioners who are going through the immigration court process, they're not familiar with the American court system, they have an accredited representative or attorney, again, it creates an unworkable outcome. And Pascual here is not wanting this court to get rid of State bar complaints complying with Lozada, but merely that the EOIR, filing a complaint with the EOIR, is also compliant with Lozada's third requirement. Is there another agency or entity that would also fall within that umbrella of compliant? Because I'm also trying to understand what's the universe then of agencies that would satisfy that third requirement? Yes, Your Honor. While it's outside the purview of the briefings, Pascual believes that the Department of Homeland Security or other similar kind of agency courts would be similar to the EOIR. And so filing a complaint with them in this situation could be compliant, but going through the immigration court system, Lozada applies to immigration court cases. So whether DHS courts would also comply with Lozada, again, somewhat outside the briefings, but Pascual believes that it would. Let's say that we agree with you that the EOIR filing there constitutes strict compliance. Do we then need to answer whether strict or substantial compliance is required? No, Your Honor. This Court holds that filing a complaint with the EOIR is strict compliance. This Court does not need to get to substantial compliance. Moreover, this Court has suggested several times that substantial compliance may be sufficient to comply with Lozada. So for this Court to enumerate both of those would not be necessary if you held that EOIR is strictly compliant. And here's one other thing. Let's say that we agree with all of your affirmative arguments. I'm not deciding that, but just for purposes of this question, wouldn't your client still need to show prejudice? And how can he do that given the record? Yes, Your Honor. Pascual has shown prejudice because the fraudulent pro se brief filed on his behalf by former counsel was non-responsive. It did not address the adverse credibility finding in the immigration court. It did not address the Convention Against Torture. And it was not responsive to those issues to its— I agree that it wasn't responsive on any of that. But I'm speaking only for myself. I'm less convinced that even a responsive brief would have actually provided your client the relief that he was seeking. Can you tell me why, substantively, he should have received that relief? Yes, Your Honor. Pascual should have received that relief because he showed to the immigration court that he had been threatened with violence in his former country. And that brief, again, did not address those. It repeatedly referred to him as her. It referred to a family situation that was not applicable to him. And also, especially to the adverse credibility finding, the translator in the immigration court, I believe, had to leave early and also did not fully speak Pascual's native tongue. But what's his social group, for instance, and how did he show that he was targeted because of his membership in that social group? His social group was his immediate family and in his community. He was threatened with violence that if he went to authorities or told anyone of his family members and other individuals that he knew being killed, especially in front of him, that they would then come back and harm him. So he was a part of that family group. Are you familiar with any cases where kind of threats to your family count as a social group? I think these are always, frankly, for me, very hard situations because people want to come here because they have threats, but it's a relatively limited group of people who actually qualify under immigration laws. And I'm not sure that general threats to your family are considered enough. Off the top of my head, no, Your Honor. However, Pascual would be happy to file supplementary briefing after oral argument if required to find some of those cases. And lastly, even if this Court disagreed with Pascual's strict or substantial compliance with Lozada, this Court should find that his ineffective assistance of counsel claim is so — Your Honors, I see that I'm out of time. You're good. Finish up. That his ineffective assistance of counsel claim is so open and obvious on the face of this record, that compliance with Lozada is unneeded. The BIA already has a carve-out for exceptional circumstances where an individual doesn't have to comply with Lozada. And the Ninth Circuit in Castillo-Perez has created the essentially open and obvious on the face of the administrative record exception as well. Thank you, Your Honors. Okay. Very well. You've got three minutes of rebuttal time remaining. All right, Ms. McKinney, let's hear from you. Good morning, and may it please the Court. My name is Catherine McKinney, and I represent the Attorney General Merrick Garland in this matter. Your Honors, this Court should deny in part and dismiss in part the petition for review. The Board did not act arbitrarily in declining to grant Petitioner's motion to reopen where he failed to satisfy the procedural requirements for lodging his ineffective assistance of counsel claim. This Court has approved of the Board's use of the Lozada procedural requirements to filter and screen ineffective assistance of counsel claims, and at issue here is the third requirement, a statement regarding whether a complaint was filed with the appropriate disciplinary authorities, and if not, why not? If it had to be a state bar, then why wouldn't it just say a state bar association? Right? Why would the more general term, appropriate disciplinary authorities, be the term that was used? So the term that was used in Lozada was appropriate disciplinary authorities, but as early as 1996 in matter of Rivera, the Board was grappling with a part of this issue here, and it answered that a bar complaint was required, particularly referring to an attorney's licensing body. So there, I guess, what the Board was looking at was where the attorney was licensed to practice and whether a complaint had been filed with that body, whatever jurisdiction had licensed the attorney to practice, and as noted by the Board in matter of Rivera as early as 1996, this served several purposes for the Board. It serves to increase confidence in the claim, and that reduces the likelihood of the necessity of an evidentiary hearing. As the Board noted in that case, there's an already overburdened immigration court system, and the Board is trying to adjudicate these ineffective assistance counsel claims with the documents provided. But why doesn't the EOIR get the same thing done? I can see if someone had a problem with their attorney's performance in traffic court, it wouldn't help to submit that problem to the EOIR, but if it's an immigration matter, I don't see why that might not be a more effective place to seek the appropriate discipline. Yeah, perhaps the argument could be made. I know the argument was made in the briefing in this case that it might be in some circumstances a more appropriate body to address whatever the ineffective assistance counsel claim was on the merits in that particular case. But what the Board has explained in its published precedent in matter of Rivera was that these procedural rules serve a purpose for the Board, for the body as a whole, as they adjudicate these claims as a whole. And what they said there was the willingness to file the complaint with the body that licensed the attorney, the attorney's licensing body, increased their confidence in the merits of that claim, deterred meritless claims. So that confidence doesn't exist with a filing with the EOIR? It seems like the most direct entity to address these concerns. But the Board didn't say that filing a complaint with EOIR did not in and of itself increase the confidence. What it was stating that was that in that case, because the EOIR's regulations were not intended to be comprehensive regulations about the practice of law in the immigration field in all areas, that filing it with the State Bar increased the confidence there. So how do you... Oh, please. Sorry. Well, in a rare instance, I actually found the 28J letter in this case to be helpful. So how do you respond to that? I mean, you have a whole system that the agency has designed to communicate with State Bars so that State Bars are aware and then can take their own separate proceedings. So what is your response to that letter? So the response to that letter would be, as we argued in the brief, when these amendments were made to the disciplinary rules in 2008, believe they were first enforced in 2009, the amendments to the rules, those were meant to sort of fill gaps and expand upon the authority of EOIR in their disciplinary procedures. But EOIR, as noted in the government's brief there, when those rules were amended to expand the disciplinary process, it wasn't meant to supplant the authority of the State Bars. It meant to complement, fill in gaps, but not to supplant. And as the Board said most recently in matter of Melgar in 2020, when they referred to the bar complaint requirement, in addition to all the other purposes that had already been identified in matter of Rivera, they noted that State Bars would be in a position to determine if there's a pattern of misconduct. So there — What about Mr. Alhorn's argument, though, that if the point is to keep bad lawyers out of the immigration courts, you know, reporting him to the Alabama — the Florida Bar isn't going to keep him from practicing in the immigration — necessarily going to keep him from practicing in the immigration courts all over the country. So it — perhaps not necessarily, but I think that in that circumstance, if Florida was where the person was barred, what the Board is saying, that the confidence in that claim is increased if a filing of a complaint with the licensing authority over that individual to practice the law — to practice immigration law increases that. And also, as noted in Melgar, the practice of law in the immigration field is not limited to just practice before the immigration courts or practice before the Board. For example, there are parallel regulations governing practice before DHS or U.S. CIS or perhaps someone's practice is not exclusive to immigration law. There may be a pattern of professional misconduct — for example, failure to show up for a hearing or failure to file a brief — that maybe the state bar is in a better position to judge whether that's occurring as a whole. But why does the BIA care if someone's representing clients in Fulton County Superior Court on a contract matter? Isn't the BIA concerned with someone's performance in the immigration arena? Which is, I can tell you, as you know, a very different set of laws than really anything else. You could be completely incompetent in immigration law and very competent in many other areas of law. So, well, again — and this would go to what the government argued in the brief — that perhaps there are other methods or mechanisms of dealing with misconduct in the immigration field. But these are the ones that the Board has identified in its set of precedential decisions as helpful to them. And the Board here in this individual case didn't act arbitrarily in enforcing those rules that had been set forth in their precedential decisions as applied to the facts of this case. So even — the Board has already said in Matter-of-Lazada that filing a complaint with the appropriate disciplinary authority is important and that it serves a purpose. They've expounded upon that in Matter-of-Rivera and Matter-of-Melgar to say that's a bar complaint requirement and indicated the reasons why that's important to them and the procedural purpose it serves for the Board. So the Board here, under the abusive discretion standard, doesn't act arbitrarily or capriciously when applying those rules, those procedural requirements to the individual here. What about the argument that the term bar complaint was just a shorthand for the Lazada requirement? I — the Board in Matter-of-Rivera is specifically discussing whether the E.R. procedures that existed at the time were adequate. So it's — I do not agree that it's just a shorthand in that case because they were specifically discussing in that case the bar requirement and the authority that E.R.'s regulations provided at the time. And as we've noted, even those — those regulations have been amended when they were amended, it was specifically noted that they were not intended to supplant the functions of the disciplinary authorities of the State Bar. So that hasn't changed since then. So I wouldn't agree that it's shorthand. It's expanding upon and explaining the third Lazada requirement is what the Board was doing in Rivera and Melgar. Well, even the third requirement, some could argue, doesn't necessarily require strict compliance because there's the language that says if you didn't file it with the appropriate authority, then why not? And what does that why not mean? Does that why not suggest that there could be a good faith reason for not doing so and therefore we get to substantial compliance? Well, the Board in Matter-of-Melgar, for example, gave two examples of what might be the why not that Your Honor is referring to in that question. And the Board in Matter-of-Melgar gave two examples. One, they said that perhaps that requirement would be excused if the attorney had already been disbarred. Perhaps that requirement would be excused if there was a death of the counsel so there was no reason to file the complaint. But again, that's provided that the why not has been provided. And here we had basically no explanation in the Petitioner's motion to the Board as to why a State Bar complaint wasn't filed here. There's at page 65 and 67 of the record just a recitation of the Lozada Standards and that the Petitioner's counsel had engaged in the standards. That's also important to note that the Petitioner, when he filed his motion to reopen with the Board, had counsel. Counsel was on notice from Matter-of-Rivera as early as 1996 that the Board was using this language bar complaint and that that would apply in this circumstance because we are dealing with an attorney that the allegations were made against and there wasn't a why not. It seems to me like just stepping back that there are like two layers of flexibility built into this rule. One, as Judge Grant pointed out earlier, is the word appropriate. Two is the gloss, the substantial compliance gloss. And so if we're kind of like, it sounds like we're engaged in a good faith debate about which is better, which is like more effective, EOR or the State Bar. State Bar, you say, increases the confidence in the sort of the substantiality of the claim. EOR, I say, sort of more readily accomplishes as more efficacious in accomplishing the purpose of keeping bad lawyers out of the immigration system. Why then are we insisting on this like my way or the highway kind of rule? It just seems very strange given the sort of dual layer of flexibility that's built into the regime. I'm not sure I would agree with the my way or the highway characterization. Bar complaint or else. I mean, bar complaint or else is what the rule is, right? Well, the rule has said, and the Lozada rule is with the appropriate disciplinary authorities or if not, why not? So there's, as explained and as explained by the Board of Melgar, there may be circumstances where the why not is applicable. And then in matter of Rivera, the agency is explaining why the bar requirement is important and it serves certain procedural functions for the board. If there's, and I believe that both the board and this court in Pointe du Jour have referred to these requirements as not onerous and they understand the evidentiary reasons that the board gave for these procedural requirements and then placing the burden on the petitioner of complying with these, this court has characterized as not onerous given the policy concerns that the board has identified. It has identified in this set of precedential public decisions what procedural mechanisms are helpful to the board as a whole in these cases. It's not particularly onerous to place the burden on the movement who's asking for reopening, which is already at the board's discretion to then support their claim by complying with the procedural requirements for so doing. I've got a question similar to what I asked your friend on the other side. And for you, I wonder if maybe you're arguing past the close a little bit because we would require prejudice still. And speaking only for myself, I'm not sure that even with the best lawyer, the decision would have been any different here. Can you speak to that? So just to note that that wasn't the basis of the board's denial of the motion here, but prejudice, so the agency didn't say that, but prejudice is a requirement. I think what Your Honor's question is getting at at least with respect to asylum and withholding or removal, what the board said in the underlying merits decision was that this was what the petitioner described were acts of private violence untethered to any protective ground. And there hasn't been a showing here that there isn't access to a protected ground there. So that would go to Your Honor's question about the showing of prejudice, which I guess at this point would be something that would be required to be raised in a motion to reopen, but the agency didn't necessarily reach the prejudice issue here. So in your view, could we decide on that basis or would we need to remand in any event for the agency to consider that? I'm not 100% sure. I would have to look at this court's case law regarding futility, which is I think what Your Honor is getting to, that even if we thought so, then the case would be futile. But that's not covered in the briefs and I would need to look at that. I just briefly wanted to touch with my remaining time on the obvious-on-the-face argument. The Petitioner had asked this Court to adopt the rule from the Ninth Circuit in Castillo-Perez that when the ineffective assistance is plain-on-the-face, that compliance with lasada was not required. Just wanted to note, in addition to what we said in the brief, that that is not binding on this Court. But in addition, just to note that in the Gabaya case, which is cited in the brief, this Court rejected very similar reasoning there to a plain-on-the-face ineffective assistance of counsel argument. And there what the Court said was that the entire rationale of the lasada requirements was to prevent the BIA from having to scour the record to determine whether or not, from an examination of record, that ineffective assistance of counsel was present. So just noting that that's pretty much been rejected by the Gabaya panel. I have one more question that you may not know the answer to. Let's say that Mr. Pascual is completely successful. Given that he's already removed, would, I don't know that he would have an ability to return, but would it simply erase the kind of negative part of his record in the event that he wanted to return in a documented way for other purposes? The government has not argued that his removal has in any way mooted the case. I'm not asking if it's mooted. I'm just asking practically. And this, frankly, is to fulfill my own curiosity. Practically, if you know what would happen in a situation like this where the person's already been removed. I believe that that would be a question for the Board. Were this Court to agree with the petitioner's arguments and send this case back to the Board, then the Board would still have to look. As we've noted, the Board didn't address the other issues raised in the motion because it decided it on procedural grounds. And then the Board would then address that because they would need to address prejudice, other things that Your Honors are bringing up, even if the Court disagrees with the government at this point about whether or not the procedural requirements had been satisfied. So then it would go back to the Board in any event. But do you know what happens if he's completely successful on all of his arguments? Is he hopping on a plane to come back to the United States? Or is kind of the negative consequences for the future of removal? Or is that what's erased? If he's completely successful in all of his arguments before this Court, because the procedural context of the motion is reopened, the case would go back to the Board for it to then decide the other issues first. That would be the first thing that would happen.  Very well. Thank you so much. All right. So, Mr. Wall, you've got the three minutes of rebuttal, correct? Yes, Your Honor.  Quickly, to address the prejudice question raised by Judge Grant, as this Court stated in Duquesne, a lack of briefing creates a rebuttable presumption of prejudice. Here, while, yes, there was briefing filed on behalf of Pasquale, it was essentially no briefing at all because of how unresponsive it was. Second, as to my opposing counsel's argument about Gabbaia and what this Court stated in its attitude towards Castillo-Perez, in Gabbaia, the petitioner did not comply with Lozada at all and asked either this Court or the BIA to scour the record and essentially find he made a claim that he had ineffective assistance of counsel and he asked this Court or the BIA to go find his ineffective assistance of counsel. Pasquale has not asked the BIA nor this Court to go find his ineffective assistance of counsel. He has shown it. He has scoured the administrative record and he has shown that this allegedly pro se, fraudulent, unresponsive brief is his ineffective assistance of counsel. And to the two main points in rebuttal, matter of Rivera and matter of Malgar. First, the government argues that matter of Rivera is controlling here. Matter of Rivera used bar complaint, again, repeatedly in quotation marks and is merely dicta. Besides that, the Attorney General in the wake of Rivera, 73 Federal Register, I believe, let me get you the exact pin site, 73 Federal Register 76914, in the wake of Rivera, the Attorney General and other agencies had concerns over the EOIR being too weak in its ability to discipline attorneys. Rivera's logic in its discussion of the bar complaint was the EOIR was essentially a paper tiger. At the behest of the Attorney General, it did take 13 years until these rules to get implemented in 2009. Teeth were given to that tiger. The EOIR has teeth at the behest of the Attorney General. Now, the government wants to turn back the clock and take away those teeth that it gave to the EOIR. Secondly, as to matter of Malgar, I believe in the first paragraph of the Malgar opinion, quote, the disciplinary authority complaint obligation under matter of Lozada. That is the very top of the page in the matter of Malgar opinion. Malgar was not centered on whether an EOIR complaint or a bar complaint, which of those were satisfactory. It just referred to Lozada and the bar complaint in passing because the petitioner and matter of Malgar did not file a complaint. No court has addressed this issue specifically of if the EOIR, if an EOIR complaint is compliant with Lozada. Thank you, Your Honors. That is all. Thank you very much. And I'll just note for the record that Mr. Alhorn and Mr. Wall are both law students practicing under the auspices of the Alabama Appellate Advocacy Clinic. You both did very well. Thank you so much for your service to the court.